

The following constitutes the order of the court.
Signed May 25, 2018

_____
**William J. Lafferty, III**
**U.S. Bankruptcy Judge**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| In re | ) |
| | ) Case No. 16-40050 |
| Fox Ortega Enterprises, Inc. | ) Chapter 7 |
| | ) |
| | ) |
| Debtor. | ) Adv. Pro. No. 18-04012 |
| _____ | ) |
| Michael Kasolas, Chapter 7 Trustee, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| Johnny Yau, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**AMENDED MEMORANDUM OF DECISION ON MOTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2) TO DISMISS CASE FOR LACK OF PERSONAL JURISDICTION**

This adversary proceeding for recovery of fraudulent transfers is one of many such proceedings stemming from the collapse and subsequent chapter 7 bankruptcy filing of Fox Ortega Enterprises, Inc. ("Debtor"). On March 8, 2018, Defendant Johnny Yau filed a motion to dismiss this proceeding for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) ("the Motion") (doc. 10). Defendant is one of many non-resident defendants

involved in similar actions related to this bankruptcy but is the only one to bring a 12(b)(2) motion. Defendant alleges that when he placed multiple orders from his computer in his Hong Kong residence for wine from Debtor's business located in California, Defendant did not purposefully avail himself of either the United States or California as forums. Defendant therefore alleges that he does not have the requisite minimum contacts constitutionally required to subject himself to personal jurisdiction in this Court, and Plaintiff must sue him in Hong Kong to obtain the relief sought. Plaintiff disagrees and filed a timely opposition (doc. 17) that argues that Defendant did purposefully avail himself of this forum when he knowingly and purposefully placed online orders for wine sold by a California business and appeared personally at the physical store to protest poor customer service and make at least one purchase. For the reasons explained below, the Court agrees with Plaintiff and will deny the Motion.

### Factual Background

The facts relevant to the Motion are largely undisputed and are derived from the Complaint (doc. 1), the declaration of Defendant Johnny Yau (doc. 11), and the declaration of Brian Nishi (doc. 19), one of Debtor's former employees.

In 1997, Defendant learned of Debtor's wine business, Premier Cru, which employed a business model of putatively selling pre-bottled wine at very favorable prices, from a friend in Hong Kong where he resides. Yau Decl. Defendant's first purchases from Premier Cru were made through his wife, Virginia Yau, and shipped to an address in California. Nishi Decl. In 2008, Defendant created an account in his own name and requested the wine be shipped to Hong Kong. *Id*. Defendant maintained this business relationship with Premier Cru through 2014. *Id*.

Most of his interactions with Premier Cru, both purchasing wine and complaining about performance delays, were conducted online (through Premier Cru's website, facsimile, and through email) while Defendant was physically located in Hong Kong. Yau Decl. However, on at least one occasion, as evidenced by a signed receipt, Defendant made an in-store purchase in Berkeley, California. Nishi Decl. The terms and conditions of the online purchases included the following language: "Any wine sold to you by Premier Cru is sold in California. . . . All orders are shipped by a California wine retailer." *Id*., Exh. 1.

On January 8, 2016, Debtor filed a chapter 7 bankruptcy petition. On January 5, 2018, Plaintiff Trustee filed a complaint for recovery of fraudulent transfers to Defendant from Debtor pursuant to 11 U.S.C. § 544, 548, 550[1], and California Civil Code § 3439.04. The Complaint alleges that Debtor was engaged in a fraudulent scheme to sell pre-arrival wine, and after Debtor had entered into $40 million worth of obligations to deliver wine to customers that it could not satisfy, the scheme fell apart. The complaint alleges that those customers who have received their wine, such as Defendant, received fraudulent transfers from Debtor at the expense of the thousands of customers who have not received value for their purchases.

Defendant has moved to dismiss the complaint on the grounds that this Court lacks personal jurisdiction over him.

### Background Law

At the outset, the Court must clear up a point of confusion that permeated both the papers and the oral argument. Defendant's opening brief makes arguments and cites case law concerning diversity jurisdiction in federal district courts. "In a diversity case [brought in California], the court must first inquire whether the assertion of jurisdiction satisfies California state law as well as due process requirements." *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1194 (9th Cir. 1988) (citations omitted). Accordingly, Defendant argues, and relies on cases supporting such argument, that California could not exercise jurisdiction over Defendant. Strictly speaking, this is an irrelevant line of argument.

Bankruptcy courts derive personal jurisdiction over parties in adversary proceedings through Federal Rule of Bankruptcy Procedure 7004(f), which reads in relevant part:

> (f) Personal Jurisdiction. If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service. . . is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.

Pursuant to this rule, bankruptcy courts need not inquire whether a California court would be able to exercise personal jurisdiction over a defendant through the state's long arm statute. *See Levey v. Hamilton (In re Teknek, LLC)*, 354 B.R. 181, 193 (Bankr. N.D. Ill. 2006) (explaining

---

[1] Unless stated otherwise, references to "the Code" or to particular statutes are made to the United States Bankruptcy Code (Title 11 of the U.S. Code).

that when subject matter jurisdiction derives from the bankruptcy statute rather than diversity of citizenship or a federal question, the court simply analyzes minimum contacts under the Fifth Amendment due process clause). So long as the exercise of personal jurisdiction does not violate the United States Constitution, personal jurisdiction exists over a properly served defendant in a proceeding, such as this one, arising under the Code. *See, e.g., Goodson v. Rowland (In re Pintlar Corp.)*, 133 F.3d 1141, 1144 (9th Cir. 1998). Additionally, the relevant forum is not, as repeatedly suggested by Defendant, California but rather the United States as a whole.[2] *In re Teknek, LLC*, 354 B.R. at 192 (citations omitted).

As it happens, California's long arm statute confers personal jurisdiction coextensive with due process requirements under the United States Constitution, so the analysis is similar. *Sinatra*, 854 F.2d at 1194. The only difference is that California state long arm statute personal jurisdiction is governed by the Fourteenth Amendment whereas bankruptcy court statutory personal jurisdiction is governed by the Fifth Amendment. Nevertheless, both analyses depend on due process inquiries that are substantially the same. Therefore, while Defendant's argument is based on case law that is technically irrelevant to the extent it establishes a test for determining under the Fourteenth Amendment the constitutional propriety of assertions of personal jurisdiction in diversity cases (which this is not), the rationale underlying those decisions is consistent with the analysis of personal jurisdiction under the United States Constitution's Fifth Amendment to which the Court now turns.

"[T]he constitutional touchstone [of personal jurisdiction jurisprudence] remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Personal jurisdiction analysis under the Fifth and Fourteenth Amendments both require application of the "minimum contacts" test. *In re*

---

[2] The proper forum to consider for these cases is not California but the United States as a whole because the personal jurisdiction asserted derives from a federal statute that allows nationwide service of process. *See e.g., In re Enron Corp.*, 316 B.R. 434, 444-45 (Bankr. S.D. N.Y. 2004). However, since Plaintiff did not bring this suit in a jurisdiction far from the relevant contacts, whether the relevant jurisdiction is California, as Defendant wrongly asserts, or the United States, as Plaintiff correctly asserts, makes no difference to the result. Defendant thinks this suit should be brought in Hong Kong and believes bringing it in any court located in the United States is constitutionally impermissible.

*Teknek, LLC*, 354 B.R. at 193. Courts may assert personal jurisdiction over a non-resident defendant in one of two situations.

First, courts may exercise "general" personal jurisdiction over a non-resident defendant if that defendant engages in substantial, systematic, or continuous activity within the jurisdiction. *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1477 (9th Cir. 1986). Such contacts allow a court to exercise general personal jurisdiction over a non-resident defendant even if the cause of action is not related to those activities. *Id*. General personal jurisdiction is not at issue in this case.

Second, courts may exercise "specific" personal jurisdiction over a non-resident defendant if the defendant purposefully directed his activities at the forum, and the litigation results from injuries arising out of those activities. *Burger King Corp.*, 471 U.S. at 472-73 (citations omitted). This requirement is designed to prevent defendants from being summoned to far away courts solely because of "random," "fortuitous," or "attenuated" contacts. *Id.* at 475. It is vitally important in the context of the arguments made in this case to note that the Supreme Court has specifically found that "[j]urisdiction [based on minimum contacts with the forum] may not be avoided merely because the defendant did not *physically* enter the forum State." *Id*. at 476. In *Burger King*, the Supreme Court noted "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Id*. Additionally, "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Id*. (citations omitted). Finally, "[e]ven a single purposeful contact may be sufficient to meet the minimum contacts standard when the underlying proceeding is directly related to that contact." *Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 419 (10th Cir. 1996) (citing *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

Defendant makes much in his papers of the three-factor test used in the Ninth Circuit to settle specific personal jurisdiction disputes. These factors have been promulgated in

Fourteenth Amendment analyses and do not thereby add greater protections against the assertion of personal jurisdiction against non-resident defendants than does the United States Supreme Court jurisprudence described above. Nevertheless, the Court concludes that the Ninth Circuit would apply the same factors in a Fifth Amendment context, and the factors are simply a restatement of Supreme Court case law, so this Court believes it appropriate to apply them here.

> [The Ninth Circuit] applies a three-part test to evaluate whether a court may exercise specific jurisdiction: 1. The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. 2. The claim must be one which arises out of or results from the defendant's forum-related activities. 3. Exercise of jurisdiction must be reasonable.

*Sinatra*, 854 F.2d. at 1195. "To satisfy the minimum contacts requirement, the court examines whether the [defendant] acted affirmatively to promote or transact business in [the forum]." *Id*. (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986)). "A lesser showing of minimum contacts may still warrant the exercise of jurisdiction upon a showing of reasonableness." *Id*. (quoting *Burger King*, 471 U.S. at 477).

Once a court determines that a defendant has established minimum contacts sufficient to exercise either specific or general personal jurisdiction, such contacts must be balanced with other factors to determine if an exercise by the court of personal jurisdiction over the defendant is consistent with "fair play and substantial justice." *Burger King*, 471 U.S. at 476 (quoting *International Shoe*, 326 U.S. at 320). The presence of other material factors, such as a significant burden on the defendant, may render the exercise of personal jurisdiction unconstitutional even if the defendant purposefully directed her activities at forum residents. *Id*. at 477. In the Ninth Circuit, a showing of minimum contacts creates a rebuttable presumption that exercise of personal jurisdiction is reasonable. *Sinatra*, 854 F.2d at 1195. Once the entitlement to the presumption is established, the defendant bears the burden of proving that the exercise of jurisdiction is unreasonable. *Id*. (citing *Burger King*, 471 U.S. at 477-78).

**Legal Analysis**

The Court will not engage in a general personal jurisdiction analysis because, although the papers are ambiguous, Plaintiff's counsel explained at the hearing that Plaintiff is not asserting that general personal jurisdiction is appropriate on these facts. Therefore, the Court is only concerned with whether it can exercise specific personal jurisdiction over Defendant.

With respect to the first factor in the Ninth Circuit's three-factor specific personal jurisdiction test, Defendant did consummate a transaction (actually many transactions) by which he purposefully availed himself of the privilege of conducting activities in this forum. Defendant learned about Premier Cru from a friend. Defendant does not claim he was confused about the geographic location of Premier Cru. He knew that the store was in California, and he knew that California is in the United States. The purchase and shipping conditions on Premier Cru's website note that Premier Cru is a California company. In fact, Defendant admitted through counsel at the hearing to being physically present at the store in Berkeley, California on at least one occasion to complain about poor service (i.e., failure to deliver purchased wine, a complaint shared by literally thousands of Debtor's customers). Plaintiff included in its opposition to the Motion a receipt indicating that Defendant made a purchase from the physical store with a credit card. He appears to have signed the receipt confirming payment in the amount of $109.34.

The Motion relies on the premise that Defendant was never present physically in California or the United States when he purchased wine from Premier Cru relevant to this litigation. Even if the Court assumes that to be true, [3] the United States Supreme Court has been abundantly clear, since the 1950's, that physical presence in a forum is not necessary for a court in that forum to assert personal jurisdiction over a non-resident defendant. In 1957, the Supreme Court explained that "[w]ith this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a

---

[3] When confronted with the evidence of an in-store purchase, Defendant replied (doc. 20) that because the purchase was an over-the-counter purchase and not a purchase for future delivery, the transaction is unrelated to this fraudulent transfer litigation. That argument makes little sense to the Court, but deciding the issue is not necessary to this disposition. The online transactions by themselves are plenty to justify asserting specific personal jurisdiction over Defendant.

party sued to defend himself in a State where he engages in economic activity." *McGee*, 355 U.S. at 223 (holding that personal jurisdiction was constitutionally exercised in California over a non-resident insurance company that conducted its business with resident insured plaintiff through the mail). In *Burger King*, a 1985 case, the Supreme Court explained that economic activity was increasingly occurring through the mail and over wires. The internet did not even exist in its modern form, and the Court was already addressing Defendant's argument in this case directly.

In *Burger King*, the Supreme Court approved of a Florida court exercising specific personal jurisdiction over a Burger King franchisee in Michigan and rejected the argument that the defendant was not subject to personal jurisdiction in Florida because he conducted all of his litigation-related activities with Burger King from Michigan. The argument that it is unfair to bring suit against a non-resident defendant when all or substantially all of that defendant's contacts with the forum were through wires, the mail, or other cross-border communications did not prevail in 1985. It did not prevail in 1957. Defendant has shown no reason why it would prevail today. Instead, Defendant argues against the weight of well-established Supreme Court precedent dating back over sixty years that has been repeatedly reaffirmed in the intervening years as technological progress only strengthens the underlying rationale of those decisions.

Defendant cites *Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247 (9th Cir. 1980), for the proposition that "[the argument that] telephone calls, faxes and e-mails to in (sic) California somehow constitute purposeful availment of the benefits and protections of California laws" fails categorically because "the use of the mails or telephones do not qualify as purposeful activity invoking the benefits and protections of the state on the receiving end of such communications." The Motion at p. 6-7. Defendant apparently draws this rule from one line in the *Gonzalez* opinion that reads, "[Defendant] validly argues that use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the state." *Gonzalez Corp.*, 614 F.2d at 1254 (citation omitted).

It appears that the Ninth Circuit in *Gonzalez* was concerned that, in a case where the locus of a commercial transaction was in Costa Rica, tangential international communications by mail and telex could be used as a justification to exercise personal jurisdiction over a non-resident defendant. This is a valid concern but is one not presented in the case before the Court. In the Motion, Defendant provides absolutely no context for this one line from *Gonzalez*. Some context is necessary, and Defendant should have provided it to the Court.

The *Gonzalez* case is inapposite to an analysis of personal jurisdiction in this case. Apparently, the only basis in that case for a California court to exercise specific personal jurisdiction over the defendant was "frequent communication by mail and telex between the [defendant] and [the plaintiff]'s Los Angeles office *concerning* the contracts." *Id*. at 1249 (emphasis added). Therefore, the mail and telex communications at issue in *Gonzalez* were qualitatively different from those at issue here.

The Court will note some other lines from *Gonzalez* that Defendant might have discussed in his moving papers. "In none of the transactions, including the one in dispute, was California either the source or destination of the grain." *Id*. at 1249. Moreover, the dispute in *Gonzalez* arose from a contract "entered into in Costa Rica by an exchange of letters between [Defendant] and [Plaintiff]'s representative in Costa Rica." *Id*. The court found that "[the defendant] has not performed any act relating to the contract at issue by which it purposefully availed itself of the privilege of conducting business in California. Its actions within the state were unrelated to Gonzalez's present claim." *Id*. at 1254. The facts of *Gonzalez* are not closely analogous to the facts of this case.

Defendant did not enter into contracts with Premier Cru in Hong Kong through Premier Cru's Hong Kong agents, and his electronic communications with Premier Cru were not limited to mere discussions "concerning" those contracts. Rather, Defendant used the internet and perhaps communications satellites via his phone to deliberately form contracts with Premier Cru in California for wine to be shipped from California subject to terms that explicitly stated that the contracts were formed in California and Premier Cru was a California company. Additionally, and by his own admission, Defendant traveled to California and complained about not receiving his purchased wine at the physical Premier Cru location. He

also purchased wine in person at the store on at least one occasion. These contacts were purposefully directed by Defendant and are obviously not the type of random or attenuated contacts that would constitutionally bar this Court from exercising personal jurisdiction over Defendant.

The pertinent question for this Court is not whether Defendant has physically appeared in California or the United States but rather whether he purposefully directed his litigation-related activities toward forum residents. Defendant admits that he has. He purposefully ordered wine, many times over several years, from Premier Cru. Premier Cru is a California company. Defendant was aware of this. The means with which he directed those activities is irrelevant. Defendant could have used the internet to order wine, he could have ordered by mail, or he could have ordered by carrier pigeon. In all three cases, Defendant would have initiated transactions with a California resident that purposefully availed himself of the United States and California as forums and by such transactions would have implicated the protections of their laws. Additionally, Defendant made at least one purchase of wine while physically in California, and he admits to being physically present in California to complain at the store about not receiving wine that he had purchased. It is conceivable that one of the reasons Defendant received some of the alleged fraudulent transfers while other customers did not is because Defendant went to the store to complain in person.[4] The first factor is amply satisfied.

The second factor requires the litigation to arise from the defendant's forum contacts. Defendant does not really contest this factor other than with respect to the in-person purchase evidenced by the above-mentioned receipt. By this litigation, Plaintiff seeks to recover value fraudulently transferred by a chapter 7 debtor to Defendant in an amount in excess of $600,000 and avoid obligations to Defendant valued at over $300,000. Defendant initiated the transfers in question when he ordered wine from Premier Cru, and it is possible that some of these transfers were finally made in response to his in-person agitation at the store. Defendant received wine while thousands of other customers of Premier Cru, who also potentially paid below market prices for the same wine, did not. Those customers are still waiting to receive

---

[4] This pattern of the squeaky wheel receiving the grease is a common one in this bankruptcy.

their bargained-for value and have claims against the chapter 7 estate. The purchases of wine made by Defendant from Premier Cru are the entire focus of this litigation. Had Defendant never deliberately purchased and taken delivery of wine from a forum resident, Premier Cru, this litigation with respect to Defendant would not exist. Therefore, the second factor is amply satisfied.

The third factor requires assessment of the reasonableness of this Court exercising personal jurisdiction over Defendant. As explained above, in *Burger King*, the Supreme Court held that the minimum contacts test may be even more readily satisfied when the equities cut in favor of exercising personal jurisdiction in a particular forum. Defendant's argument with respect to this reasonableness prong is it would be burdensome for him to be sued in California. However, Defendant has already demonstrated the ability to hire local counsel; Defendant travels to California multiple times a year to see his wife and children; and although it is possible that Defendant may be required to appear personally in this Court, such an event is unlikely.

On the other hand, the burden to Plaintiff of suing Defendant in Hong Kong is manifestly greater. Defendant counters by arguing that "[t]here can be no doubt that [P]laintiff has a convenient and effective method of obtaining relief in this action, if such relief is justified, i.e., the filing of a lawsuit in *Hong Kong*, which has a [c]ourt system which is independent of China, and is based on English common law." Def. MPA at p. 7, ln. 20-22 (emphasis added). The Court doubts, despite a shared affinity for the common law Anglo-American tradition of jurisprudence, that Plaintiff's primary concerns about being forced to bring this suit in Hong Kong are nullified by Hong Kong's nominal independence from China and the fact that its judicial system was imposed upon it by the United Kingdom.

If Defendant's position is correct that Defendant has a right to be sued where he resides so long as he did not physically enter the forum state (or country), Plaintiff would be able to obtain the relief sought in this litigation only through a suit brought in Hong Kong. This, by itself, is unreasonable enough. However, this is not the only fraudulent transfer action Plaintiff is bringing on behalf of the bankruptcy estate. There are over 100 such cases with defendants residing all over the United States and the world. As Defendant would have

it, the reasonable answer to this state of affairs is that the Constitution of the United States requires Plaintiff to bring separate lawsuits in jurisdictions all over the world (and indeed all over the United States).[5] Especially in the context of bankruptcy proceedings, this theory is clearly unreasonable.

There is a strong federal interest in hearing bankruptcy matters in the bankruptcy court where the bankruptcy case was filed. *See In re Teknek, LLC*, 354 B.R. at 204-05. The very purpose of bankruptcy law is to liquidate or reorganize a debtor's affairs in one place in as organized, efficient, and predictable a fashion as possible. *See* 28 U.S.C. § 1334(a) & (e) (providing exclusive federal jurisdiction over bankruptcy cases and the property in bankruptcy estates). Requiring bankruptcy trustees in large cases to sue to recover money for the estate in every defendant's forum of residence whenever that defendant conducted her activities over the internet would severely undermine this interest.

### Conclusion

This is simply not a close case. The relevant law has been settled for decades. The fact that there is a dearth of case law concerning federal courts exercising personal jurisdiction over non-resident defendants when those defendants were customers who made their purchases online is not vindication for Defendant's argument as he seems to believe. Rather, it is indicative of 1) the fact that usually these disputes flow the other way, from buyer to seller, and 2) other similarly situated defendants are not making this argument because it strains the bounds of reason given the evolution of personal jurisdiction law over the last 70 years.

Defendant purposefully directed commercial activity at a forum resident, Premier Cru, when he purchased thousands of bottles of wine from Premier Cru over the course of several years. The fact that these purchases, or nearly all of these purchases, were made over the internet does not defeat this Court's exercise of personal jurisdiction over Defendant. This litigation directly flows from Defendant's purposeful contacts with the United States. Finally,

---

[5] Lest a reader worry that the Court is exaggerating this point, the Court notes that when this exact proposition was put to Defendant's counsel at the hearing, he responded by expressing the belief that "99.9%" of the defendants in these fraudulent transfer actions are not subject to jurisdiction in California "if they don't live here and weren't physically here."

for the reasons stated above, the exercise of jurisdiction over Defendant by this Court does not offend notions of fair play and substantial justice and is not unreasonable.

Accordingly, the Court will issue an order DENYING the Motion.

**\*END OF MEMORANDUM\***

**<u>Court Service List</u>**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28